IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-00296-01-CR-W-BCW |
| | ) | |
| JI LI HUANG, | ) | |
| | ) | |
| Defendant. | ) | |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement in which the parties jointly ask the court to impose a specific sentence as an appropriate disposition of this case, to-wit: a sentence between 0-18 months' imprisonment, a term of supervised release, a $250,000 fine, a $100 special assessment, and forfeiture of the property identified in the Allegation of Forfeiture.

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Tammy Dickinson, United States Attorney, and Brian P. Casey and Matthew P. Wolesky, Assistant United States Attorneys, and the defendant, Ji Li Huang ("the defendant"), represented by J.R. Hobbs.

The defendant understands and agrees that this plea agreement is only between Ji Li Huang and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the indictment charging defendant with violating 18 U.S.C. § 1832(a)(5), that is, conspiracy to commit theft of trade secrets. The defendant also agrees to forfeit to the United States the property described in the Allegation of Forfeiture of the indictment. By entering into this plea agreement, the defendant admits having knowingly committed this offense, and admits being guilty of this offense.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which defendant is pleading guilty are as follows:

### PITTSBURGH CORNING

Pittsburgh Corning Corporation (Pittsburgh Corning) is a company that manufactures glass products for industrial, commercial, and building markets. Pittsburgh Corning's corporate headquarters are located in Pittsburgh, Pennsylvania. Pittsburgh Corning distributes its products in interstate and foreign commerce to all areas of the United States and internationally.

Among its products, Pittsburgh Corning produces various grades or densities of cellular glass insulation sold under the trade name FOAMGLAS® insulation. FOAMGLAS® insulation is used to insulate buildings, industrial piping systems and liquefied natural gas storage tank bases. Pittsburgh Corning considers the product formula and manufacturing process for FOAMGLAS® insulation to be confidential and proprietary information and trade secrets.

In light of the sensitivity and value of its trade secrets related to FOAMGLAS® insulation, Pittsburgh Corning takes reasonable measures to protect and keep secret such information, including restricting physical access to this information, restricting electronic access to this information, training employees on information security measures, marking documents with proprietary warnings, and requiring the execution of non-disclosure agreements by employees.

**SUMMARY OF CONSPIRACY**

Beginning on an unknown date prior to June 14, 2012, and continuing until on or about September 2, 2012, in the Western District of Missouri, and elsewhere, the defendant, with the intent to convert trade secrets related to a product that is produced and placed in interstate and foreign commerce to the economic benefit of someone other than owner, conspired with at least two other persons to knowingly receive, buy and possess trade secrets belonging to Pittsburgh Corning related to the product formula and manufacturing process for FOAMGLAS® insulation, while believing the same to have been stolen, appropriated, obtained, and converted without authorization, and intending and knowing that the offense would injure Pittsburgh Corning.

It was the object of the conspiracy for the defendant, co-defendant Xiao Guiang Qi, and an unnamed co-conspirator (herein CC) to convert for their own economic benefit the trade secrets and confidential and proprietary information of Pittsburgh Corning related to the product formula and manufacturing process for FOAMGLAS® insulation for the purpose of manufacturing, marketing, and selling a competing cellular glass insulation product based on those trade secrets from a production facility located in China.

**INITIAL CONTACT WITH PITTSBURGH CORNING**

On or about, June 14, 2012, defendant Huang along with a person acting as his interpreter met with at least one employee of Pittsburgh Corning at Pittsburgh Corning's headquarters in Pittsburgh, Pennsylvania, in an attempt to obtain trade secrets of Pittsburgh Corning related to the product formula and manufacturing process for FOAMGLAS® insulation, but the employee did not provide any confidential or proprietary information. During that meeting, however, defendant Huang learned that Pittsburgh Corning produced FOAMGLAS® insulation at a manufacturing plant in Sedalia, Missouri, which is located in the Western District of Missouri.

On or about June 18, 2012, defendant Huang, along with the interpreter that accompanied him to Pittsburgh, Pennsylvania, traveled to Sedalia, Missouri, and entered onto the Pittsburgh Corning manufacturing facility without the permission of Pittsburgh Corning, for the purpose of stealing, appropriating, obtaining, and converting without authorization trade secrets related to the product formula and manufacturing process for FOAMGLAS® insulation, including obtaining electronic images of the same. After arriving in Sedalia, and to dissuade defendant Huang from entering the plant, the translator falsely interpreted one of the warning signs posted in front of the plant. Defendant Huang then took a picture of the sign and sent the picture via text message to defendant Qi. Defendant Qi, who was in China at the time, corresponded with defendant Huang regarding the content of the sign. Defendant Huang and the translator then entered the plant and were confronted by Pittsburgh Corning personnel. Because he feared being arrested for trespassing, the translator falsely stated that their reason for entering the plant was that they were looking for a gas station.

On or about June 19, 2012, defendant Huang, along with the same interpreter, again attempted to enter onto the Pittsburgh Corning manufacturing facility in Sedalia, Missouri, without the permission of Pittsburgh Corning, for the purpose of stealing, appropriating, obtaining, and converting without authorization trade secrets related to the product formula and manufacturing process for FOAMGLAS® insulation. This time employees of Pittsburgh Corning stopped defendant Huang in the parking lot, and the defendant did not enter the facility. When confronted by Pittsburgh Corning personnel, the interpreter falsely stated that their reason for attempting to enter the plant was that they were lost and were looking for a lake.

**ADVERTISEMENT AND SUBSEQUENT CONTACT**

On or about July 22, 2012, defendant Huang and the co-conspirator described herein as CC caused an advertisement to be placed in a Sedalia, Missouri, newspaper that stated as follows:

> Technical talent wanted to explore together Asian market. You are equipped with more than 10 years experience on foam glass in Corning Pittsburgh? You are able to lead a project to build up a foam glass factory with continuous research on new formulas. You are willing to adventure in asia for couple of years? We prepared battle field for you.

The advertisement listed an e-mail address for CC as the point of contact.

Working in conjunction with law enforcement, an employee of Pittsburgh Corning, identified herein as Employee-1, replied by e-mail to this advertisement and stated an interest in the position advertised.

From on or about August 5, 2012 until on or about August 24, 2012, CC, on CC's own behalf and on behalf of defendant Huang, sent more than seven e-mails to an e-mail address used by Employee-1 requesting that Employee-1 provide specific trade secret information related the product formula and manufacturing process for FOAMGLAS® insulation that CC acknowledged knowing was propriety information of Pittsburgh Corning. In the e-mails, CC stated that Employee-1 would receive monetary compensation in exchange for providing the requested trade secrets.

On or about August 24, 2012, CC spoke with Employee-1 on the telephone and agreed on CC's own behalf and on behalf of defendant Huang to pay Employee-1 $100,000 in exchange for the requested trade secret information that CC acknowledged was the "intellectual property" of Pittsburgh Corning. CC agreed that defendant Huang would provide Employee-1 with the first $25,000 on September 2, 2012, in exchange for documents containing trade secret information

5

related the product formula and manufacturing process for FOAMGLAS® insulation that had been stolen, appropriated, obtained and converted without authorization.

From on or about August 26, 2012, until on or about September 1, 2012, CC, on CC's own behalf and on behalf of defendant Huang, sent at least eight e-mails to Employee-1 requesting Employee-1 to obtain specific trade secret information related to the product formula and manufacturing process for FOAMGLAS® insulation, and arranging for defendant Huang and defendant Qi to meet with Employee-1 to purchase the requested trade secrets.

### MEETINGS IN KANSAS CITY, MISSOURI

On or about August 30, 2012, defendant Huang and defendant Qi entered the United States from China possessing at least $20,000 in United States currency, which was the amount defendant Huang declared to United States Customs and Border Protection upon entry. Defendant Huang and defendant Qi obtained the United States currency in China for the purpose of providing it to Employee-1 in exchange for the requested trade secret information, but defendant Huang falsely stated to Customs and Border Protection that the funds were for a different purpose.

On or about September 1, 2012, defendant Qi, on his own behalf and on behalf of defendant Huang, sent approximately three e-mails to arrange for a dinner meeting with Employee-1 later that day in Kansas City, Missouri, for the purpose of discussing purchasing the requested trade secret information.

On or about September 1, 2012, defendant Huang and defendant Qi met with Employee-1 at a restaurant in Kansas City, Missouri, and discussed purchasing trade secret information related to the product formula and manufacturing process for FOAMGLAS® insulation. Defendant Huang and defendant Qi, acting as the translator for defendant Huang, agreed to purchase the

6

requested information for the previously agreed upon price of $25,000 up front, with $75,000 to follow later, at a meeting the next morning, after being advised by Employee-1 that he would have to steal the requested information from Pittsburgh Corning and that the defendants obtaining this information could ultimately put Pittsburgh Corning out of business.

On or about September 2, 2012, defendant Huang and defendant Qi met with Employee-1 at a hotel room in Kansas City, Missouri, to purchase the requested trade secret information that they had been advised Employee-1 stole from Pittsburgh Corning the night before. The defendant's brought with them $29,778.55 in United States currency to provide to Employee-1 to purchase the trade secrets that had been stolen, appropriated, obtained and converted without authorization and showed that currency to Employee-1. Employee-1 showed the defendant's documents he claimed to be the requested trade secret information, and those documents displayed markings such as "secret," "proprietary and confidential," and "property of Pittsburgh Corning." The defendants noted to themselves that the documents had markings that needed to be removed.

**4. <u>Use of Factual Admissions and Relevant Conduct.</u>** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining defendant's guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that in calculating the offense level for the charge to which defendant is pleading guilty, the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2), or as part of the "offense of conviction" pursuant to U.S.S.G. § 1B1.2.

7

**5. Statutory Penalties.** The defendant understands that upon defendant's plea of guilty to Count One of the indictment charging a violation of 18 U.S.C. § 1832(a)(5), the maximum penalty the Court may impose is not more than 10 years of imprisonment, a $250,000 fine, 3 years of supervised release, an order of restitution, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

a. in determining the appropriate sentence, the court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows: a sentence between 0-18 months' imprisonment, a term of supervised release, a $250,000 fine, a $100 special assessment, and forfeiture of the property identified in the Allegation of Forfeiture. If the court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the court rejects this plea agreement, it must, on the record and in open court, inform the parties that the court rejects the plea agreement, advise the defendant personally that because the court is rejecting the plea agreement the court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to 3 years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d. if the defendant commits a supervised release violation, the Court may revoke supervised release and impose an additional period of imprisonment of up to 2 years without credit for time previously spent on supervised release. In

addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed 3 years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release; and

  e. any sentence of imprisonment imposed by the Court will not allow for parole.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the conspiracy to commit theft of trade secrets offense for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count Two of the indictment at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney's Office for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives defendant's right to challenge the initiation of the dismissed or additional charges if defendant breaches this agreement. The defendant expressly waives the right to assert a statute of limitations defense if

9

the dismissed or additional charges are initiated following defendant's breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against defendant following a breach of this plea agreement, defendant will not be allowed to withdraw defendant's guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which defendant has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw defendant's plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the court and are advisory in nature. However, if the court accepts this Rule 11(c)(1)(C) plea agreement, the court is bound to impose the sentence agreed to by the parties, as set forth in paragraph 6 above;

    b. The applicable Guidelines Manual is the one that took effect on November 1, 2012;

    c. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1, which provides for a base offense level of 6 pursuant to U.S.S.G. § 2B1.1(a)(2);

    d. There is no agreement between the parties regarding the application of an enhancement for the amount of loss pursuant to U.S.S.G. § 2B1.1(b)(1), and the parties are free to present evidence and legal argument regarding the application of any enhancement for loss at sentencing;

    e. The defendant has admitted guilt and clearly accepted responsibility for defendant's actions, and has assisted authorities in the investigation or prosecution of defendant's own misconduct by timely notifying authorities of defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, defendant is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and defendant's pretrial release; or (2) attempts to withdraw defendant's guilty plea, violates the law, or otherwise engages in conduct inconsistent with defendant's acceptance of responsibility;

    f. The defendant's criminal history category is Category I;

    g. The defendant understands that the estimated Guideline calculations set forth in the subsections of this paragraph do <u>not</u> bind the Court or the United States Probation Office with respect to the Court's determination of the applicable advisory Guidelines;

    h. The defendant and the United States confirm that the agreed sentence set forth in paragraph 6 above is both reasonable and authorized by law;

   i. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

   j. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that defendant will make during the plea colloquy, support the imposition of the agreed-upon sentence and Guidelines calculations contained in this agreement.

  **11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

  **12. Change in Guidelines Prior to Sentencing.** The defendant agrees: (a) to be bound by the agreed sentence set forth in this plea agreement even if an applicable provision of the Guidelines changes to the defendant's benefit after the execution of this plea agreement; and, (b) any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

  **13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

  a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

  b. comment on the evidence supporting the charges in the indictment;

  c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court does not impose the sentence agreed to by parties in this agreement; and

  d. oppose any post-conviction motions for reduction of sentence, or other relief.

  14. **<u>Waiver of Constitutional Rights</u>.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

  a. the right to plead not guilty and to persist in a plea of not guilty;

  b. the right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial;

  c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

  d. the right to confront and cross-examine the witnesses who testify against defendant;

  e. the right to compel or subpoena witnesses to appear on defendant's behalf; and

  f. the right to remain silent at trial, in which case defendant's silence may not be used against defendant.

The defendant understands that by pleading guilty, defendant waives or gives up those rights and that there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of

counsel, defendant's answers may later be used against defendant in a prosecution for perjury or making a false statement. The defendant also understands defendant has pleaded guilty to a felony offense and, as a result, will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement defendant waives any right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives any right to appeal defendant's sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal defendant's sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Waiver of FOIA Request.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**17. Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**18. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw defendant's plea of guilty.

The defendant also understands and agrees that in the event defendant violates this plea agreement, all statements made by defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against defendant in any and all criminal proceedings. The defendant waives any rights that defendant might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by defendant subsequent to this plea agreement.

**19. Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that defendant is satisfied with the assistance of

counsel, and that counsel has fully advised defendant of defendant's rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, defendant's attorneys or any other party to induce defendant to plead guilty.

20. **Immigration Consequences.** The defendant understands that pleading guilty may have consequences with respect to defendant's immigration status if defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including defendant's attorney or the district court, can predict to a certainty the effect of defendant's conviction on defendant's immigration status. Defendant nevertheless affirms the decision to plead guilty regardless of any immigration consequences that defendant's guilty plea may entail, even if the consequence is defendant's automatic removal from the United States. Further, the defendant understands that defendant is bound by defendant's guilty plea regardless of any immigration consequences of the plea and regardless of any advice the defendant has received from defense counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to defendant's guilty plea and to defendant's sentence based on those consequences, and agrees not to seek to withdraw defendant's guilty plea, or to file a direct appeal or collateral attack of any kind challenging defendant's guilty plea, conviction or sentence, based on the immigration consequences of defendant's guilty plea, conviction and sentence.

The defendant further waives any right to notice and a hearing before an Immigration Judge, and stipulates to voluntarily depart from the United States at his own expense within

16

seven days from completion of any sentence imposed by the Court, including but not limited to a sentence of supervised release, as a condition of the plea agreement.

21. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Tammy Dickinson
United States Attorney

Dated: 1/25/2013        /s/ Brian P. Casey
Brian P. Casey
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 1/25/2013        /s/ Ji Li Huang
Ji Li Huang
Defendant

17

I am defendant Ji Li Huang's attorney. I have fully explained to defendant the rights defendant has with respect to the offenses charged in the indictment. Further, I have reviewed with defendant the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with defendant. To my knowledge, Ji Li Huang's decision to enter into this plea agreement is an informed and voluntary one.

Dated:  1/25/2013                         */s/ J.R. Hobbs*
                                          J.R. Hobbs
                                          Attorney for Defendant

18